UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JAIME HERNANDEZ-HERNANDEZ,<br><br>Defendant. | CASE NO. CR21-32RSM<br><br>ORDER DENYING MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(C)(1)(A) |

## I.  INTRODUCTION

This matter comes before the Court on Defendant Jaime Hernandez-Hernandez's *pro se* Motion for a Reduction in Sentence under 18 U.S.C. § 3582(c)(1)(A). Dkt. #129. The Court has determined that an evidentiary hearing is unnecessary.

## II.  BACKGROUND

Defendant Hernandez-Hernandez, a 24-year-old male, pleaded guilty to conspiracy to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(a), (b)(1)(B), and 846. Dkts. #72, 76, 84. In his Plea Agreement, Mr. Hernandez-Hernandez admitted that he engaged in a conspiracy from at least September 2020 through February 2021 to distribute fentanyl in the form of counterfeit M30 pills in the Western District of Washington. Dkt. #72 ¶ 9. He admitted personally delivering counterfeit M30 pills to an undercover officer twice and also admitted that a codefendant delivered counterfeit pills to an undercover officer on other occasions. *Id.* In total, the conspiracy

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE – 1

distributed more than 823 grams of fentanyl. *Id.* When Mr. Hernandez-Hernandez's house was searched, the search revealed $13,000 in cash, and he admitted that the cash was drug proceeds. *Id.* His teenage sister also had more than 2000 pills, and Mr. Hernandez-Hernandez took responsibility for those pills, too. *Id.* The Court sentenced Mr. Hernandez-Hernandez to 60 months of imprisonment. Dkt. #120. His projected release date is May 28, 2025.

### III. LEGAL STANDARD

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress has provided an exception to that rule, known as compassionate release, which allows the Court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c); *see also United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021); *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021). The First Step Act of 2018 amended the procedural requirements governing compassionate release. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. Now, under the First Step Act, defendants are permitted to directly petition the Court for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part:

> **c) Modification of an Imposed Term of Imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(1) in any case—**
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction; or
>
> **(ii)** . . .

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE – 2

and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Before passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. *See* 28 U.S.C. § 994(t). In doing so, Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides:

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

The Ninth Circuit has concluded that this policy statement is not binding in connection with motions filed by defendants. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). It also has recognized, however, that the policy statement "may inform a district court's discretion" under § 3582(c)(1)(A). *Id.* It is the defendant's burden to show special circumstances meeting the high bar for a sentence reduction. *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

## IV. ANALYSIS

In deciding whether to grant Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i), the Court first considers whether Defendant has met the statutory

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE – 3

exhaustion requirement for compassionate release. If the exhaustion requirement is met, the Court turns to three substantive considerations that govern compassionate release analysis: (1) whether "extraordinary and compelling reasons warrant such a reduction," (2) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (emphasis in original) (internal citations and quotations omitted). "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *Id.*

### A. Statutory Exhaustion

The Court first determines whether Defendant has met the statutory exhaustion requirement. Where, as here, the Director of the BOP has not filed the motion on Defendant's behalf, the Court may only consider the motion if Defendant has requested that the BOP make such a motion and either (i) defendant has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (ii) 30 days have elapsed since the "warden of the defendant's facility" received a compassionate-release request from defendant. *Keller*, 2 F.4th at 1281 (quoting 18 U.S.C. § 3582(c)(1)(A)).

Here, Defendant has provided a copy of the request he submitted to the warden of his facility for compassionate release on July 15, 2023. *See* Dkt. #129 at 5. More than 30 days have elapsed since Defendant submitted his request and the Government does not argue that Defendant has failed to satisfy the exhaustion requirement. *See* Dkt. #131 at 3 n.1. The Court therefore considers the merits of Defendant's Motion for Compassionate Release.

//

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE – 4

B. "Extraordinary and Compelling Reasons"

It is defendant's burden to establish an extraordinary and compelling reason warranting compassionate release. *See Wright*, 46 F.4th at 951. Here, Defendant argues that his confinement during the COVID-19 pandemic and the purportedly dire conditions at FCI-Sheridan, where he has been in custody, constitute "extraordinary and compelling reasons" justifying release. Dkt. #129 at 1–3. While Defendant paints a grim picture of the conditions at FCI Sheridan, he makes no specific allegation that he was denied needed care or subject to specific risks or harms particular to him or any health conditions he may have.[1]

In fact, the Government notes that Mr.Hernandez-Hernandez's Motion appears to be a form motion that has been field by at least ten defendants convicted in this district and currently incarcerated at FCI Sheridan (including Hernandez-Hernandez). *See United States v. Slaughter*, No. 13-cr-00359-RSL, Dkt. 115; *United States v. Brooks*, No. 19-cr-00093-JLR, Dkt. 112; *United States v. Taylor-Narin*, 18-cr-005094-BHS, Dkt. 1185; *United States v. Stahlman*, No. 18-cr-05094-BHS, Dkt. 1184; *United States v. Fuentes*, No. 20-cr-00092-JCC, Dkt. 1087; *United States v. Flores-Lopez*, No. 19-cr-203-RSM, Dkt. 777; *United States v. Pigott*, No. 21-0013-RAJ, Dkt. 35; *United States v. Fierro Ponce*, No. 20-cr-00092-JCC, Dkt. 1090; *United States v. Bravo-Vargas*, No 21-CR-00139-JLR, Dkt. 47.

The Honorable Robert S. Lasnik recently denied a motion for a reduction in sentence in one of these cases. *See Slaughter*, No. 13-cr-00359-RSL (W.D. Wash.), Dkt. 117. Judge

---

[1] Defendant argues that "[s]everal inmates at FCI Sheridan have received partial reductions to their sentences for the conditions of confinement" at the facility. Dkt. # 115 at 1. However, the defendants in the cases cited to by Mr. Hernandez-Hernandez based their compassionate release motions on their particularized circumstances rather than general conditions of confinement. *See United States v. Westwolf*, No. CR19-41GF-BMM, 2023 WL 3305102 (D. Mont. May 8, 2023) (granting reduction in sentence based on defendant's "deteriorating eyesight and related medical complications"); *United States v. Beltran*, No. CR19-35GF-BMM, 2023 WL 3851047 (D. Mont. June 6, 2023) (granting reduction in sentence in light of "BOP's potential failure to award Beltran credit for time served").

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE – 5

Lasnik concluded, and the Court here concurs, that although the allegations in the form motion were "likely better suited to a habeas petition or civil rights claim, there appears to be no barrier preventing the Court from considering his claims under the compassionate release framework." *Id.* at 7. Judge Lasnik denied the motion in *Slaughter*, saying that "[w]hile defendant's motion paints a very troubling picture of life at Sheridan FCI during the pandemic, courts in this district have consistently concluded that 'general conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release,'" and that "[g]iven that defendant has failed to address how the lockdowns at Sheridan FCI have impacted him personally and instead describes the conditions of confinement more generally, the Court finds that defendant's experience at Sheridan FCI – while undoubtedly difficult – does not constitute grounds for compassionate release." *Id.* (citations omitted).

      Here, Mr. Hernandez-Hernandez fails to meet the "extraordinary and compelling" standard for the same reasons as in *Slaughter*. Defendant explains that he has "endured countless additional punishments in the form of onerous lockdowns and restrictions on programing…medication shortages, staff shortages, food shortages, and general inability of both (FDC Sea-Tac and FCI Sheridan) to manage the number of inmates incarcerated with those institutions." Dkt. #129 at 2. He further explains that FCI Sheridan is currently locked down every weekend. *Id.* These are generalized allegations. So too are the "supplements prepared by a law clerk at FCI Sheridan detailing the conditions at the prisons," which Mr. Hernandez-Hernandez attached to his motion. *See id.; id.* at 3–4. The Court admits the conditions explained in this supplement are harrowing. For instance, the supplement states that "[f]or over a year, inmates were not able to set food outside or breathe fresh air, they were locked in their cells 24

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE – 6

hours a day, coming out every 3 days to shower for 15 minutes and back into their cells." *Id.* at 3. However, the Court does not even know if Mr. Hernandez-Hernandez was at FCI Sheridan during this year. Further, courts in this district have consistently concluded that "general conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release." *United States v. Bolden*, No. CR16-320RSM, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020); *see also United States v. Kvashuk*, No. CR19- 143JLR, 2023 WL 3866678, at *2 (W.D. Wash. June 7, 2023) (collecting cases). Given that Defendant has failed to address how the conditions at FCI Sheridan have impacted him personally and instead describes the conditions of confinement more generally, the Court finds that defendant's experience at FCI Sheridan—while undoubtedly difficult—does not constitute grounds for compassionate release.[2]

C. Section 3553(a) Factors

Even if the Court were to conclude that Defendant's conditions of confinement constituted extraordinary and compelling reasons, the Court finds that a sentence reduction would not be consistent with the applicable sentencing factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *see also Keller*, 2 F.4th at 1284. In the context of compassionate release, relevant factors include: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," (ii) the need for the sentence imposed (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (2) to adequately deter criminal conduct and "to protect the public from further crimes of the defendant," and (3) "to provide the defendant with needed educational or vocational

---

[2] Defendant states that the conditions of his confinement during the COVID-19 pandemic have resulted in "a sentence that was more severe than the Court could have contemplated when it originally sentenced him." Dkt. #129 at 1. However, the COVID-19 pandemic began in or around January 2020, and Defendant was sentenced on September 30, 2022—more than two years into the pandemic. Dkt. #119.

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE – 7

training, medical care, or other correctional treatment in the most effective manner," (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," (iv) the sentencing guidelines, and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a); *see also United States v. Grimes*, No. CR11-5509-BHS, 2021 WL 319404 (W.D. Wash. Jan. 26, 2021) (summarizing factors).

Here, Mr. Hernandez-Hernandez still has two years remaining on his 60-month sentence and the Court finds he continues to pose a significant danger to the community given the nature and gravity of his crime. Mr. Hernandez-Hernandez trafficked in significant amounts of fentanyl—a drug that continues to plague Washington and is resulting in an exponentially increasing number of overdoses, hospitalizations, and deaths. *See* Washington State Department of Health, *Washington State Drug Overdose: Monthly Updates*, https://doh.wa.gov/sites/default/files/2022-02/wa_lhj_quarterly_report_18_1_2_pub.html (June 27, 2022). Further, Mr. Hernandez-Hernandez provides no specific information as to why the 3553(a) sentencing factors would weigh in his favor.

## V. CONCLUSION

For all the foregoing reasons, Defendant's Motion for Sentence Reduction (Dkt. #129) is DENIED.

DATED this 14th day of September, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE – 8